IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK JENKINS, on his own behalf, and BYLINE BANK, as Supervised Administrator of the Estate of MICHAEL CRAIG, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| OFFICER ALBERTO COVARRUBIAS, (Star# XXX), Lt. BRADLEY and the CITY OF CHICAGO, a municipal corporation, | ) ) ) ) | Judge Magistrate |
| Defendants. | ) | JURY DEMAND |

## COMPLAINT

**NOW COMES** the Plaintiff, PATRICK JENKINS, by and through his attorneys, Erickson & Oppenheimer, complaining against the Defendant OFFICER COVARRUBIAS, Defendant Lieutenant Bradley, individually, and the CITY OF CHICAGO, a municipal corporation, as follows:

## INTRODUCTION

1) This action, arising out of the death of Michael Craig ("Decedent"), is brought pursuant to 42 U.S.C. §1983 to address deprivations of Decedent's rights under the Constitution of the United States.

## JURISDICTION

2) The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985; the Judicial Code 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

1

## VENUE

3) Venue is proper under 28 U.S.C. Section 1391 (b). All of the parties reside in this judicial district and the events described herein all occurred within this district.

## THE PARTIES

4) The Plaintiff, Patrick Jenkins, is the son and family or household member of Mr. Craig's.

5) AJ is the son and family or household member of Mr. Craig's. AJ is a child in the care of an abuse victim, Mr. Craig.

6) The Defendant, Officer Covarrubias was at all relevant times a duly appointed police officer of the City of Chicago and at all relevant times was acting within his scope of employment and under color of law.

7) Defendant Lieutenant Bradley was at all relevant times a duly appointed police officer of the City of Chicago and at all relevant times was acting within his scope of employment and under color of law.

8) Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of Defendants Covarubbias and Bradley.

## BACKGROUND

9) The unmistakable intent of the Illinois General Assembly in enacting the Domestic Violence Act was to implement a comprehensive restructuring "of the legal system's historically inadequate response to domestic violence." (*See Moore v. Green*, 219

Ill.2d 470, 464 (2006) (Justice McMorrow, specially concurring). To that end, in section 304 of the Domestic Violence Act (750 ILCS 60/304 (West 2002)), the legislature set forth with specificity the duties and responsibilities of law enforcement officers when they are called to respond to incidents of domestic violence. The importance of law enforcement officers fulfilling these responsibilities and duties was underscored by the legislature in section 305 of the Domestic Violence Act (750 ILCS 60/305 (West 2002)), which provides that a law enforcement officer is liable for any act of omission or commission which is the result of willful and wanton misconduct. Thus, these provisions of the Domestic Violence Act underscore that law enforcement officials must be held accountable for their willful and wanton failures, otherwise, the legislature's purpose in enacting the Domestic Violence Act would be thwarted. (*Id*).

Although women constitute a large majority of the victims of intimate partner abuse, women are not the only segment of society afflicted by domestic violence. The Department of Justice found that male victims of domestic violence constitute one-third of all homicides committed by intimate partners. Melody M. Crick, *Access Denied: The Problem of Abused Men in Washington*, 27 SEAT7LE U. L. REV. 1035 (2004).

**FACTS**

10) On November October 4, 2021, 61-year-old domestic violence victim Michael Craig called 9-1-1 and asked for help from the police. He told the dispatcher that his wife was holding a knife to his throat. "I need the police over here, my wife got a knife on me on the bed, on my throat," Craig told the dispatcher, according to the audio file. "My kid is here, and he's scared."

11) He told the dispatcher that one of his kids was home and another was in school and he said he'd leave the door open for the police.

12) "She's got the knife around my neck right now. I can't move. If I move, she's going to kill me," Craig told the dispatcher.

13) While still on the line with the dispatcher, Mr. Craig told his 6-year-old son, to "[G]o downstairs so you can let the police in. Go. Do like I say, go downstairs."

14) This was not the first time that early morning that the Chicago Police were informed that Mr. Craig's wife was the aggressor and had a knife. A short time before Mr. Craig called for help from the police, Mr. Craig's neighbor called 911 and reported that Mr. Craig's young son had knocked on her door and said that his mom has a knife.

15) While responding to the domestic violence call, Defendant Covarrubias was told by the dispatcher that the "mom has a knife."

16) Just minutes later, Defendant Covarrubias is told by the dispatcher that "the wife has a knife to [Mr. Craig's] his throat.

17) Defendant Covarrubias is told by the dispatcher before he arrives on scene that that it was Mr. Craig that made the 911 call asking for police help.

18) When Defendant Covarrubias arrived at Mr. Craig's home, he found Mr. Craig's 6-year-old son standing alone in front of the building. He asked the boy "who has the knife," and the boy responded, "my mommy." Defendant Covarrubias then asked, "what is *she* doing with the knife."

19) Body worn camera footage shows that Defendant Covarrubias pulled out a stun gun and is holding it in his right hand as he walked up the steps to the 2nd floor apartment.

20) Seconds later, as he continued to climb the stairs, Defendant Covarrubias inexplicably, and contrary to all accepted police procedures, moved his Taser to his left hand and drew his gun with his right. He continued to climb the stairs and in a low voice and just once, says "Chicago Police."

21) Just before Defendant Covarrubias reached the landing at the top of the stairs, Mr. Craig can be heard saying "she's got a butcher knife on my head," followed by a loud scream from Mr. Craig.

22) As soon as Defendant Covarrubias stepped in front of the open front door of the apartment and Mr. Craig came into view, Defendant Covarrubias immediately and without warning or command, fired a bullet into Mr. Craig. Mr. Craig fell immediately to the bathroom floor.

23) Again, contrary to all standard police procedures, the Defendant fires the Taser almost simultaneously with the first shot from his gun.

24) It is clear from the body camera worn that Defendant Covarrubias did not have view a knife or any other weapon in either of Mr. Craig's hands.

25) As Mr. Craig lay bleeding on the bathroom floor, unable to move other than to slightly lift his head, Defendant Covarrubias pointed his gun at Mr. Craig, stood over him, aimed and fired a second shot into the helpless victim's chest.

26) The electric crackle from the fired Taser can be heard on the BWC audio while the Defendant fired the second, and wholly unnecessary, shot from his gun.

27) Defendant Covarrubias simultaneously Tasered and fired two lethal bullets into a harmless, unarmed, non-threatening domestic violence victim after Defendant

Covarrubias was told five times that the aggressor who possessed a deadly weapon was a woman.

28) With full knowledge that he has shot Mr. Craig twice and Tasered him once, Defendant Covarrubias ignored Mr. Craig as Craig laid on the floor moaning in pain and bleeding profusely, for a full three minutes.

29) Defendant Covarrubias then approaches the aggressor who had the knife at the moment Defendant Covarrubias entered the apartment and begins asking her where she was cut and inspecting her body for wounds—not because he is concerned for her health or safety—but because he is searching for some post hoc justification for the shooting despite this information being unavailable to him at the time he shot Mr. Craig.

30) When Defendant Covarrubias finally approached Mr. Craig, he merely he merely taps Craig on the shoulder, failed to render any medical aid or obtain any information to relay to EMTs.

31) Deliberately indifferent to Mr. Craig's obvious medical needs, the Defendant checked the perpetrator for stab wounds, asking repeatedly where she's cut and if she's OK.

32) Another almost three minutes pass before the Defendant checks Mr. Craig's pulse.

33) Nine minutes of the shooting Defendant Covarrubias's body camera footage show Mr. Craig lying halfway inside the bathroom, his head near the toilet, with a pool of blood below his body, the handle of a toilet plunger leaning against his side.

34) At no time did either Defendant Covarrubias or Defendant Bradley make any attempt to render any medical aid to the dying Mr. Craig.

35) Mr. Craig also had been stabbed five times by the domestic violence offender.

36) Mr. Craig was pronounced dead at the scene and the domestic violence offender was taken by ambulance to a hospital for observation.

37) The Cook County medical examiner's office said Craig was pronounced dead at 8:09 a.m. that day.

38) An autopsy determined Craig died of multiple gunshot wounds and his death was ruled a homicide

39) Mr. Craig was, at all relevant times, a person in need of the protections under the Illinois Domestic Violence Act. *See* 750 ILCS 60/304 (West 2002).

40) Patrick Jenkins is a family and/or household members of Mr. Craig and a person in need of protections under the Illinois Domestic Violence Act.

41) AJ is a child in the care of a domestic abuse victim, Mr. Craig, and a person in need of protections under the Illinois Domestic Violence Act.

42) Defendants Covarrubias and Bradley had a duty to protect Mr. Craig stemming from the Domestic Violence Act. *See* 750 ILCS 60/304 (West 2002).

43) Defendants Covarrubias failed to protect Mr. Craig from domestic violence.

44) Defendants Covarrubias failed to protect AJ and Patrick Jenkins from domestic violence.

45) The above said actions of Defendants Covarrubias and Bradley were intentional, willful and wanton and/or committed with reckless indifference and disregard for the Decedent's rights.

46) Said actions of Defendants Covarrubias and Bradley were objectively unreasonable under the circumstances.

47) As a result of Defendant Covarrubias and Bradley's actions as set forth hereto, the Decedent suffered emotional and physical damages, including death.

## COUNT I— DOMESTIC VIOLENCE ACT (750 ILCS 60/304)

48) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

49) All Plaintiffs were at all relevant times, persons in need of the protections under the Illinois Domestic Violence Act.

50) Defendants Covarrubias and Bradley had a duty to protect Mr. Craig stemming from the Domestic Violence Act. See 750 ILCS 60/304 (West 2002).

51) Defendants Covarrubias and Bradley had a duty to protect Mr. Craig stemming from the Domestic Violence Act. See 750 ILCS 60/304 (West 2002).

52) Defendants Covarrubias and Bradley failed to protect Mr. Craig from domestic violence.

53) Defendants Covarrubias and Bradley failed to protect the minor child (AJ) from domestic violence.

54) As a result of Defendant Covarrubias and Bradley's actions as set forth hereto, the Decedent suffered emotional and physical damages, including death.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Covarrubias for an award of reasonable compensatory and punitive damages, plus costs.

## COUNT II – EXCESSIVE FORCE

55) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

56) The actions of Defendant Covarrubias as set forth hereto constitute excessive force against the Decedent, thus violating his rights under the United States Constitution and 42 U.S.C. Section 1983.

57) As a direct and proximate consequence of Defendant Covarrubias' conduct, the Decedent suffered damages, including without limitation violations of his constitutional rights and emotional and physical pain and suffering.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Covarrubias for an award of reasonable compensatory and punitive damages, plus attorney's fees and costs.

### COUNT III—FAILURE TO INTERVENE

58) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.
59) Defendant Bradley was acting under color of state law.
60) Defendants deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.
61) Defendant Bradley had reason to know that excessive force was being used
62) Defendant Bradley had reason to know a constitutional violation was being committed by a law enforcement official
63) Defendant Bradley had a realistic opportunity to intervene to prevent the harm from occurring.
64) As a direct and proximate consequence of Defendant Bradley's conduct, the Decedent suffered damages, including without limitation violations of his constitutional rights, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Bradley for an award of reasonable compensatory and punitive damages, plus costs.

### COUNT IV - UNLAWFUL SEIZURE

65) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.
66) The actions of Defendants as set forth hereto constitutes an unreasonable seizure of the

Decedent, thus violating his rights under the United States Constitution and 42 U.S.C. Section 1983.

67) As a direct and proximate consequence of Defendant Covarrubias' conduct, the Decedent suffered damages, including without limitation violations of his constitutional rights, emotional anxiety, fear, pain and suffering, and monetary expense.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Covarrubias for an award of reasonable compensatory and punitive damages, plus costs.

## COUNT V - WRONGFUL DEATH

68) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

69) The actions of the Defendant Covarrubias as set forth hereto caused the wrongful death of the Decedent, in violation of ILCS 740 180/1 *et seq*.

70) The Defendant Covarrubias' actions proximately caused the Decedent to suffer injuries, including without limitation great bodily harm and death as well as pain and suffering.

71) As a result of the Defendant Covarrubias' conduct, the Estate has suffered injury, including without limitation incurring medical and/or funeral expense and the loss of society and companionship.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Covarrubias for an award of reasonable compensatory and punitive damages, plus costs.

## COUNT IV—SURVIVAL ACTION (state law claim)

72) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

73) After the Decedent was shot, he survived for a period of time during which he experienced conscious pain and suffering.

   **WHEREFORE**, the Plaintiff prays for judgment against Defendant Covarrubias for an award of reasonable compensatory and punitive damages, plus costs.

## COUNT V—FAMILY EXPENSE ACT (state law claim)

74) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

75) As a direct and proximate cause of Defendant Covarrubias's actions which caused the death of the Decedent, Plaintiff Patrick Jenkins, son of the deceased, Michael Craig, has been obligated to incur financial expenses, including without limitation funeral and burial costs.

   **WHEREFORE**, the Plaintiff prays for judgment against Defendant Covarrubias for an award of reasonable compensatory and punitive damages, plus costs.

## COUNT VI—WILLFUL AND WANTON MISCONDUCT (state law claim)

76) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

77) At all relevant times, Defendant Covarrubias had a duty to refrain from acting in a willful and wanton manner.

78) At all relevant times, Defendant Covarrubias engaged in a course of action which showed an actual or deliberate intention to cause harm or which, if not intentional, showed an utter indifference to or conscious disregard for the safety of others or their property.

79) The acts of Defendant Covarrubias were willful, wanton, and executed with a conscious disregard for the safety and property of others.

## COUNT VII—INDEMNIFICATION

80) Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein.

81) At all relevant times, Defendant City of Chicago was the employer of Defendant Covarrubias.

82) Defendant Covarrubias committed the acts alleged above under the color of law and in the scope of his employment as an employee of the City of Chicago.

83) In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

84) As a proximate cause of Defendant Covarrubias's unlawful acts, which occurred within the scope of his employment, Decedent was injured.

**WHEREFORE**, should the individual Defendant be found liable on one or more of the federal claims set forth above, Plaintiff demands that Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against said Defendant, plus attorney's fees and costs awarded and such other and additional relief that this Court deems equitable and just.

## COUNT VIII—*RESPONDEAT SUPERIOR*

85) Each of the paragraphs above is incorporated by reference as though fully stated herein.

86) In committing the acts alleged in the preceding paragraphs, Defendant Covarrubias was an agent of the City of Chicago and was acting at all relevant times within the scope of his employment and under color of law.

87) Defendant City of Chicago is liable as principal for all torts committed by its agents.

**WHEREFORE**, should the individual Defendant be found liable on one or more of the state claims set forth above, Plaintiff demands that, pursuant to *respondeat superior*, Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against said Defendant(s), as well as costs awarded.

## JURY DEMAND

The Plaintiff requests a trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

Respectfully submitted,

/s/ Michael Oppenheimer

Erickson & Oppenheimer, Ltd.
223 W. Jackson, Suite 612
Chicago, IL 60606
312-327-3370